# EXHIBIT 1

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 2 of 46 PageID #: 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

RONALD P. MAZZA, D.C., P.C.,

                                    Plaintiff,

-Against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO CASUALTY COMPANY,  GEICO
CHOICE INSURANCE COMPANY  GEICO
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO SECURE INSURANCE COMPANY,

                                    Defendants.

INDEX NO:

**SUMMONS**

Plaintiff designates NASSAU
County as the place of trial.
The basis of this designation
is: Defendant transacts
business in NASSAU County

To the above-named Defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action
and to serve a copy of your answer, or, if the complaint is not served with this
summons, to serve a notice of appearance, on the Plaintiff's attorney(s) within
20 days after the service of this summons, exclusive of the day of service (or
within 30 days after service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

LEWIN & BAGLIO, LLP

DATED: July 30, 2024

DocuSigned by:

*Michael Baglio*

0A1D48C12A73421...

By: Michael Baglio Esq.
Attorneys for the Plaintiff
1100 Shames Drive
Suite 100
Westbury, NY 11590
(516) 307-1777 (Office)
(516) 307-1770 (Fax)
L&B File No.:  2198-EUO-
01

Defendant's Addresses

GOVERNMENT EMPLOYEES
INSURANCE COMPANY
 One GEICO Plaza
Washington, DC 20076-0001
GEICO CASUALTY COMPANY

FILED: NASSAU COUNTY CLERK 08/05/2024 05:34 PM
NYSCEF DOC. NO. 1
Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 3 of 46 PageID #: 10

GEICO CHOICE INSURANCE
COMPANY
GEICO GENERAL INSURANCE
COMPANY
ONE GEICO PLAZA
WASHINGTON, DC 20076-0001
GEICO INDEMNITY COMPANY
GEICO SECURE INSURANCE
COMPANY

Case 2:24-cv-06984-JMW    Document 1-2    Filed 10/02/24    Page 4 of 46 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
_____
RONALD P. MAZZA, D.C., P.C.,

                                Plaintiff,

        -Against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO CASUALTY COMPANY, GEICO
CHOICE INSURANCE COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO SECURE INSURANCE COMPANY.
                                Defendants.
_____

INDEX NO:

**VERIFIED COMPLAINT**

Plaintiff, RONALD P. MAZZA, D.C., P.C., (hereafter "The Plaintiff" or "The

Practice"), by and through its attorneys, Lewin and Baglio, LLP, brings this

complaint against the Defendants GOVERNMENT EMPLOYEES INSURANCE

COMPANY,

GEICO CASUALTY COMPANY, GEICO CHOICE INSURANCE COMPANY,

GEICO GENERAL INSURANCE COMPANY, GEICO INDEMNITY COMPANY,

and GEICO SECURE INSURANCE COMPANY (hereinafter collectively, "The

Defendants" or "GEICO") and alleges as follows upon knowledge as to themselves

and their own actions and otherwise upon information and belief:

# The Parties and Relevant Non-Parties

### A.          The Plaintiff

13.     The Practice is the eponymous professional corporation of Ronald P.

Mazza, D.C. The Practice is a duly licensed Chiropractor in the State of New York,

and is domiciled in New York State. Ronald P. Mazza, D.C., is the sole shareholder

of The Practice and has been so since its inception.

L&B File No 2198-EUO-01

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 5 of 46 PageID #: 12

14.     "Exhibit 1" attached to this Complaint shows claims for No-Fault treatment rendered by The Practice, which identifies the relevant patient/assignors, dates of the services, and the charges for those services, which totals $63,974.04, and continuing.

### B.        The Defendants and Non-Party BHI

1.     GOVERNMENT EMPLOYEES INSURANCE COMPANY ("GEICO") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

2.     GEICO CASUALTY COMPANY ("GEICO Casualty") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

3.      GEICO CHOICE INSURANCE COMPANY ("GEICO Choice") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

4.     GEICO GENERAL INSURANCE COMPANY ("GEICO General") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

5.     GEICO INDEMNITY COMPANY ("GEICO Indemnity") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 6 of 46 PageID #: 13

6.      GEICO SECURE INSURANCE COMPANY ("GEICO Secure") is a foreign corporation licensed by the New York State Department of Financial Services to issue insurance policies in the State of New York.

7.      GEICO, GEICO Casualty, GEICO Choice, GEICO General, GEICO Indemnity, and GEICO Secure (collectively, "The GEICO Crew") are wholly owned subsidiaries of non-party Berkshire Hathaway Inc. ("non-party BHI").

8.      Non-party BHI is a conglomerate holding company organized under the laws of the state of Delaware with its principal office located at 3555 Farnam Street, Omaha, Nebraska.

9.      Non-party BHI owns the subsidiaries it holds.

10.     Non-party BHI owns several different insurance companies ("BHI's Insurance Family").

11.     The GEICO Crew are members of non-party BHI's Insurance Family.

# <u>Nature of the Case</u>

### A. Background

15.     New York Insurance law provides that the owner of every automobile shall be liable for the payment of first party benefits ("No-Fault Benefits").

16.     New York Insurance Regulation No. 68 (11 N.Y.C.R.R. 65) ("No-Fault Regulations or The Regulations") mandates every automobile owner's policy of liability insurance issued in the State of New York contains provisions providing minimum first-party benefits.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 7 of 46 PageID #: 14

17. The No-Fault Regulations also dictate a tightly timed process of claim submission, claim verification, and claim payment or denial, which includes the use of statutory forms.

18. The Practice, and medical providers similarly situated, routinely treat patients injured in motor vehicle accidents who are entitled to receive No-Fault Benefits to pay for their treatment ("No-Fault Patients").

19. These patients routinely assign their No-Fault Benefits to their treating medical providers, such as The Practice.

20. As a result of accepting the assignment of the patient's benefits, The Practice, and medical providers similarly situated, may directly bill the patient's no-fault insurance company, and the patient does not have to pay out of pocket for the medical treatment that they receive.

21. As an assignee, The Practice, and medical providers similarly situated, submit claims for reimbursement for the treatment rendered to No-Fault patients (No-Fault Claims) to insurance carriers like The GEICO Crew in accordance with the No-Fault Regulations.

22. Once a medical provider accepts an assignment of the patient's benefits they are prohibited from seeking payment directly from the patient.

23. The Regulations mandate No-Fault claims be submitted to the appropriate carrier within 45 days of the date service is rendered to the patient.

24. The Regulations do not permit The GEICO Crew to deny a claim without having all "the pertinent information." Accordingly, the Regulations permit

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 8 of 46 PageID #: 15

The GEICO Crew to verify the facts of a claim, which may include requiring claims, and certain claim information, to be submitted using statutory forms ("Initial Verification").

25.     The Regulations also permit The GEICO Crew to request additional information necessary to verify the facts of a No-Fault claim ("Additional Verification"). The GEICO Crew has no obligation to pay or deny No-Fault claims for which verification is pending ("Premature Claim(s)").

26.     Any claim for No-Fault benefits not paid or denied within 30 days of its submission is considered overdue ("Overdue No-Fault Claim(s)"). Overdue No-Fault Claims incur a statutory interest penalty at a rate of two percent per month (simple interest).

27.     Overdue No-Fault Claim may be recovered through arbitration or litigation.

28.     An Overdue No-Fault Claim is a condition precedent to any arbitration or court action for the recovery of unpaid No-Fault benefits.

29.     The GEICO Crew knows that a Premature Claim can never be an Overdue No-Fault Claim, and that any Premature Claim cannot be subject to any statutory interest penalty.

30.     The GEICO Crew knows that no Premature Claim for No-Fault Benefits is ripe for litigation or arbitration.

31.     The Practice, and other similarly situated medical providers, routinely litigate and arbitrate Overdue No-Fault Claims submitted to The GEICO Crew.

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 9 of 46 PageID #: 16

32.     Whenever The Practice, or any other similarly situated medical provider, successfully litigates an Overdue No-Fault Claim, GEICO must pay the claim, the interest penalty, any filing fee and costs incurred, together with attorney's fees equal to 20 percent of the claim subject to a maximum fee of $1,360 per case.

33.     The Practice has successfully litigated improperly denied claims for No-Fault benefits against The Geico Crew.

**B.      The Float**

34.     Non-party BHI is a conglomerate holding company; its sole business purpose is to extract profits from companies that it owns and controls; it sells no goods and offers no services.

35.     Non-party BHI's  Insurance Family is a big earner; it generates substantial money for BHI.

36.     The GEICO Crew are the biggest earners for the Insurance Family and, thus, BHI.

37.     Non-party BHI needs investment funds, so it looks to members of its Insurance Family as a source of cash.

38.     The major sources of cash from its Insurance Family are: unpaid losses and loss adjustment expenses; life, annuity, and health benefit liabilities; unearned premiums and other policyholder liabilities, less premium and reinsurance receivables; deferred policy acquisition costs and deferred charges on assumed

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 10 of 46 PageID #: 17

retroactive reinsurance contracts. Non-party BHI refers to this pile of cash as, "the Float".

39. The GEICO Crew is a corrupt cartel that operates in New York State.

40. The GEICO Crew controls 28.95 percent of the market share for private automobile liability insurance in New York State, making it the number one writer of private automobile liability premiums in New York.

41. Because of GEICO's market share providers like The Practice see a disproportionately large number of patients who are covered by a policy written by a member of the GEICO crew. The GEICO Crew's dominant market share coupled with the idiosyncracies of New York's No-Fault regulatory framework means The GEICO Crew decides who is eligible for reimbursement of No-Fault benefits and when they are eligible. This means the GEICO Crew determines which claims it wants to pay and when it wants to pay them.

42. The GEICO Crew is aware that not paying a provider may have a dramatic impact on a provider's cash-flow and could potentially cause irreparable financial harm to a medical provider.

43. The GEICO Crew uses its dominant market share to strong-arm medical providers into agreements to accept less money than they are legally owed or risk not being paid at all. In other words, The GEICO Crew makes payment only to those medical providers that fall into line.

44. As a result of its tactics and agreements, the GEICO Crew unjustly increases its profits and increases the amounts of its unpaid losses.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 11 of 46 PageID #: 18

45.     The GEICO Crew then kicks-up those ill-gotten gains, the increased profits and large amounts of unpaid losses, to non-party BHI, to fund the Float.

46.     Non-party BHI, therefore, has a vested interest in insurance claims not being paid and/or payment being delayed because the cash used to make those payments can, instead, be used to fund the Float.

47.     The GEICO Crew knows or should know that non-party BHI funds the Float using the Insurance Family's increased profits, unpaid losses and loss adjustment expenses, life, annuity and health benefit liabilities, unearned premiums and other policyholder liabilities less premium and reinsurance receivables.

### C.     How the GEICO Crew improperly uses the verification process to fund the Float

48.     It is the GEICO Crew's intent to increase unpaid losses for New York No-Fault claims so that it can kick that money up to non-party BHI.

49.     The GEICO Crew knows unpaid No-Fault losses that are pending verification cannot be overdue, so those unpaid losses don't incur an interest penalty.

50.     The GEICO Crew, therefore, developed a protocol to manipulate its unpaid No-Fault losses by increasing the number of premature No-Fault Claims while reducing the number of Overdue No-Fault Claims ("the EUO Protocol").

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 12 of 46 PageID #: 19

51.     The GEICO Crew also wants to reduce the amount medical providers accept as reimbursement for the medical treatment rendered to accident victims in New York. The reason for The GEICO Crew wanting to reduce the amount providers accept is- by reducing the amount the GEICO Crew pays to medical providers, the Crew's profits will increase.

52.     A fundamental premise to their scheme is the No-Fault Insurance Law and Regulations mandate that charges for medical treatment rendered to accident victims be in accordance with the New York Workers Compensation Fee Schedule ("Fee Schedule")[1].

53.     The GEICO Crew, however, uses its EUO protocol to extort from medical providers agreements to accept less than the Fee Schedule amount(s) owed.

54.     The GEICO Crew knows that No-Fault reimbursement is a significant form of cash flow for The Practice and medical providers similarly situated.  Once it implements its EUO Protocol against a provider, like The Practice, GEICO renders every claim that provider submits for reimbursement premature by subjecting the claim to the verification and EUO protocol.

55.     The result of the protocol is that the GEICO Crew obtains the benefit of the ability to meet its contractual obligations to pay for medical treatment rendered to its insured at no cost to the insured.

13. ————————————————

[1] The Fee Schedule amounts are less than the 80th percentile of charges for the same service rendered by other providers in the same geographic region.

**L&B File No 2198-EUO-01**

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 13 of 46 PageID #: 20

56.     By subjecting medical providers to its protocol, GEICO is able to fulfill its contractual obligation at a reduced cost, and in some situations at no cost at all.

### D.     THE EUO PROTOCOL

57.     Once The GEICO Crew identifies a provider it wishes to target with its EUO protocol, GEICO demands that provider appear for an Examinations Under Oath ("EUO").

58.     GEICO also demands that the provider produce voluminous documentation regarding the provider's business.

59.     During the EUO, GEICO asks for sworn testimony regarding such issues as corporate structure, employee status and compensation, ownership of equipment, property leases, and tax filings and structure.

60.     Subsequent to the EUO,  The GEICO Crew asks the medical provider to submit even more documentation regarding the subjects which the provider was questioned about during the EUO.

61.     In the event the medical provider submits a response to GEICO it is inevitable that GEICO will request even more documentation or will raise objections to the documents provided.

62.     In other words, The GEICO Crew goes into the EUO knowing it will not accept the targeted-provider's sworn testimony without additional documentation, and knowing that even if the provider submits additional documentation that they will simply issue new and additional requests.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 14 of 46 PageID #: 21

63.     The GEICO Crew lulls the targeted-provider into a false sense of security that its EUO will be the equivalent of a simple check-up on the targeted-provider's ability to collect No-Fault benefits, when it is actually the equivalent of a proctological examination of the targeted-provider's business.

64.     Upon completion of the EUO, The GEICO Crew makes demands for documents, including, among other things, tax documents, sensitive and privileged business information, and sensitive and privileged personnel information.

65.     The GEICO Crew claims this information is necessary to verify the targeted-provider is eligible to recover No-Fault Benefits.

66.     The GEICO Crew knows or should know, the Regulations providing a toll of the time to pay or deny a claim, created by a timely request for an EUO, <u>do not</u> grant an insurer additional opportunities to make requests for verification that would otherwise be untimely.

67.     The GEICO Crew knows or should know, that a request for additional information upon completion of an EUO does not serve to delay an insurer's time to pay or deny a claim for No-Fault benefits.

68.     Nevertheless, the GEICO Crew makes demands for sensitive business and personal information after the targeted-provider completes the EUO; then, when the targeted-provider invariably informs the GEICO Crew that it won't or can't turn over copies of sensitive business information, The GEICO Crew deems the EUO incomplete.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 15 of 46 PageID #: 22

69.     The GEICO Crew then claims they do not have enough information to determine whether to pay or deny any claim from the targeted-provider, because they allegedly cannot ascertain whether the targeted-provider is eligible to receive No-Fault benefits, i.e., that the No-Fault claims are all "premature".

70.     The GEICO Crew then withholds reimbursement of the targeted-provider's claims for No-Fault benefits and does so while attempting to circumvent the statutory interest penalty for unpaid Overdue No-Fault Claims.

71.     The GEICO Crew knows or should know that their actions with respect to The Practices's No Fault claims are improper, adversarial, and an abuse of New York's No-Fault regulations.

72.     11 N.Y.C.R.R. § 65-3.2 (b) & (c) mandates an insurer to "assist the applicant in the processing of a claim[,] [d]o not treat the applicant as an adversary"; "[d]o not demand verification of facts unless there are good reasons to do so [and][w]hen verification of facts is necessary, it should be done as expeditiously as possible.".

73.     The GEICO Crew knows or should know their behavior is both improper and an abuse of the truth-seeking opportunity that 11 N.Y.C.R.R. § 65-3.16 (a) (12) authorizes. The GEICO Crew's behavior--delay , leverage its power, and recalcitrance—is the very abuse by insurance carriers the Court of Appeals warned about in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 NY3d 313 (2005).

74.     In *Mallela*, the Court of Appeals said, "carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 16 of 46 PageID #: 23

and local law," but "[t]he regulatory scheme, however, does not permit abuse of the truth-seeking opportunity that 11 N.Y.C.R.R. § 65-3.16 (a) (12) authorizes" (*Mallela*, 4 NY3d 313). "[I]n the licensing context", the Court of Appeals said "carriers will be unable to show 'good cause' unless they can demonstrate behavior tantamount to fraud. Technical violations will not do." *Id.*

75.    While The GEICO Crew, may, themselves, be engaging in behavior tantamount to fraud, The GEICO Crew has not demonstrated behavior tantamount to fraud committed by The Practice.

76.    The GEICO Crew is intentionally abusing The Practice  and The Practice by dressing its actions in the regulatory cloth of "claim verification."

77.    The Practice  and The Practice have responded to each and every request made by The GEICO Crew.  The Practice, via The Practice , provided the GEICO crew its *Bona Fides*, appeared for an EUO, provided proper responses to the questions posed, and when appropriate, interposed specific and pointed objections.

78.    The GEICO Crew, has, therefore, the information necessary to pay or deny the claims.

79.    The GEICO Crew refuses to issue payment or a denial regarding the claims identified on "Exhibit 1".

80.    We ask this Court to reiterate to The GEICO Crew that it may not use the claim verification process like a pretrial discovery **fishing expedition**, particularly when they cannot set forth a reliable factual basis for what amounts to, at best, mere suspicions.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 17 of 46 PageID #: 24

81.     Plaintiff asks the Court for the following declaratory relief pursuant to CPLR 3001:

82.     We ask the Court to declare The Practice meets all applicable New York State or local licensing requirements necessary to provide Chiropractic treatment;

83.      We ask the Court to declare that the information sought by The Geico Crew is not necessary to verify whether and The Practice meets all applicable New York State or local licensing requirement necessary to provide Chiropractic treatment;

84.     We ask the Court to declare that the "EUO Protocol," which results in otherwise valid No-Fault claims being deemed premature for a want of unnecessary information, is an abuse of the claim verification process.

85.     We ask the Court to declare that The GEICO Crew's post EUO demands for additional information are improper and/or unnecessary to verify The Practice's eligibility to receive No-Fault Benefits, and will not, therefore, toll the 30-day statutory time limit to pay or deny said claims and will render those claims ripe for litigation.

## Jurisdiction and Venue

86.     This Court has jurisdiction over Plaintiff's request for a declaratory judgment pursuant to CPLR 3001.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 18 of 46 PageID #: 25

87.     This Court has jurisdiction over the Defendants because they regularly conduct business within New York State, and because the conduct that forms the basis of this declaratory judgment action occurred in New York State.

88.     Venue is proper in NASSAU County because Plaintiff resides and conducts business in NASSAU County.

# Factual Allegations

### E.        No-Fault Law and eligibility for No-Fault benefits

89.     The GEICO Crew knows that injured individuals eligible for No-Fault benefits usually assign their claims to their health care providers rather than seek reimbursement from insurance carriers directly 11 N.YC.R.R. § 65-3.9.

90.     The GEICO Crew knows that health care providers seeking to collect No Fault benefits must be in compliance with all applicable New York licensing laws.

91.     The GEICO Crew is required to pay No-Fault benefits within 30 days upon receipt of proof of the fact and amount of loss sustained from the applicant.

92.     Upon receipt of a claim from a medical provider seeking to collect No-Fault benefits, The GEICO Crew has 15 business days to request any additional verification *required by the insurer to establish proof of claim*, 11 N.Y.C.R.R. § 65-3.5 [emphasis added].

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 19 of 46 PageID #: 26

93.     The GEICO Crew and other unnamed entities are exploiting the No-Fault verification requirement by demanding additional verification from The Practice for every claim that The Practice has submitted since December 2023.

94.     The EUO request letters, utilized by the GEICO Crew to perpetuate its extortion scheme on The Practice, are patently conclusory and are intentionally tailored to pass judicial scrutiny.

95.     The purpose of the No-Fault Law is to ensure prompt payment for medical services rendered to persons injured in motor vehicle accidents; and The GEICO Crew is intentionally frustrating that purpose for its own unjust and improper benefit.

96.     Permitting The GEICO Crew to engage in full-blown discovery as part of the claim verification process is beyond the scope of the No-Fault Law and regulations. The No-Fault regulations do not deputize The GEICO Crew to be regulators of their own domain, and particularly not to perpetuate an extortion scheme on innocent medical providers for increased profits.

97.     The GEICO Crew knew or should have known that demands for corporate organizational and financial documents  are fraught with the potential for abuse.

98.     The GEICO Crew knew or should have known that an insurer should not try to defeat No-Fault claims by making an onerous and improper document demand relating to an EUO.

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 20 of 46 PageID #: 27

99.    The GEICO Crew knows or should know that it can assert that a provider is "not eligible to recover No-Fault Benefits" as a basis to deny their claims merely upon a founded beleif.

100.    The GEICO Crew knows or should know that it may bring a declaratory judgment action seeking a declaration that it has no obligation to pay The Practice No-Fault benefits.

101.    The GEICO Crew, however, is intentionally not asserting that The Practice is ineligible to recover No-Fault Benefits  so that The GEICO Crew can avoid a resolution of that issue on the merits in an action brought by The Practice for nonpayment of the subject No Fault benefits.

102.    Instead, The Geico Crew purposely renders all claims premature to avoid payment *and* the accrual of interest, in perpetuity.

103.    Accordingly, The Practice has no legal remedy for The GEICO Crew's actions.  The Practice, therefore, seeks a declaratory judgment declaring it eligible to receive No-Fault benefits and providing immediate relief from the abuse of The GEICO Crew.

**F.        Verification of claims for No-Fault benefits**

104.    The regulations require the carriers to make prompt decisions on claims once the health care provider has furnished adequate factual support for the claims, <u>Insurance Law § 5106(a)</u>.

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 21 of 46 PageID #: 28

105.    An insurer is not to treat the applicant as an adversary and is not supposed to demand verification of facts unless there are good reasons to do so, <u>11 N.Y.C.R.R. § 65-3.2</u>.

106.    An insurer may request an examination under oath of the applicant when it has specific objective justification supporting the use of such examination, <u>11 N.Y.C.R.R. § 65-3.5 (e)</u>.

107.    There are substantial consequences for a carrier's failure to pay or deny a claim within the 30-day statutory period: the preclusion of most defenses, the accrual of monthly interest at a rate of two percent, plus reasonable attorney's fees, and court costs incurred in securing payment of a valid claim, <u>11 N.Y.C.R.R. § 65-3.9(a)</u>.

108.    Failure to deny a claim within the statutory period may require an insurer to pay a No-Fault claim it might not have had to honor if it had timely denied the claim, *Presbyt. Hosp. v. Maryland Casualty Co* 90 N.Y.2d 274 (1997). The only recognized exception to the No-Fault rule of preclusion arises where an insurer raises lack of coverage as a defense, i.e., that the alleged injury does not arise out of an insured incident/accident. *Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312, 318 (2007); *Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195, 199 (1997).

### G.        The Practice's Eligibility for No-Fault Benefits

109.    The GEICO Crew knows or should have known that The Practice is a professional corporation regulated by New York State. This is public information

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 22 of 46 PageID #: 29

and a verification request is not required to verify The Practice's existence or regulatory oversight.

110.    The GEICO Crew knows or should have known that Dr. Mazza is a properly licensed Chiropractor eligible to render chiropractic treatments to No-Fault patients in New York.

111.    The GEICO Crew knows or should have known that The Practice is eligible for reimbursement of claims submitted on behalf of No-Fault patients in New York.

112.    The GEICO Crew knows or should have known that the treatments to patients involved in motor vehicle accident are limited in scope by virtue of the application of the schedules prepared and established by the Chairman of the Workers' Compensation Board for Industrial Accidents ("The Fee Schedule").

113.    The GEICO Crew knows or should have known that the charges for services that The Practice, or any similarly situated provider, renders to No-Fault patients are limited to the Fee Schedule.

114.    The GEICO Crew knows or should have known that The Practice has never been found guilty of professional or any other misconduct or incompetency in connection with medical services rendered.

115.    The GEICO Crew knows or should have known that The Practice has never exceeded the limits of its professional competence, nor has it knowingly made a false statement or representation as to a material fact.

FILED: NASSAU COUNTY CLERK 08/05/2024 05:34 PM
NYSCEF DOC. NO. 1

116.    The GEICO Crew knows or should have known that The Practice has not solicited or employed another to solicit for herself, or for another, professional treatment, examination, or care of an injured person in connection with any claim.

117.    The GEICO Crew knows or should have known that The Practice has not refused to appear before, or to answer upon request of, the Commissioner of Health, the Superintendent, or any duly authorized officer of the state, any legal question, or to produce any relevant information concerning her conduct.

118.    The GEICO Crew knows or should have known that The Practice has not engaged in patterns of billing for services which were not provided.

**H.        The Claims at Issue**

119.    The claims identified on "Exhibit 1" were for chiropractic treatment rendered by The Practice.

120.    The Practice accepted an assignment of benefits from each of the patients identified in "Exhibit 1" in exchange for rendering chiropractic treatment to those patients.

121.    The Practice submitted a claim for No-Fault benefits for each of the dates of service identified on "Exhibit 1" to The GEICO Crew in paper form, which indicated its status as the assignee of the relevant patient.

122.    The GEICO Crew received a claim by The Practice for No-Fault benefits for each of the dates of service identified on "Exhibit 1".

123.    Each of the claims for No-Fault benefits received by The GEICO Crew indicated, *inter alia*, the patient's demographic and insurance information, a

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 24 of 46 PageID #: 31

diagnosis code(s), the name and address of the place of service, the procedure code(s), the charges, and the provider's billing information.

124.    The GEICO Crew did not pay any of the claims identified in "Exhibit 1", which total $63,974.04, and continuing.

125.    The GEICO Crew did not issue any payment or a No-Fault Denial of Claim form (NF-10) for any of the claims identified in "Exhibit 1" within 30-days of their receipt by The GEICO Crew.

126.  There is no good faith factual basis for any No-Fault Denial of Claim form (NF-10) issued by The GEICO Crew for any of the claims identified in "Exhibit 1".

I.        **The GEICO Crew's Scheme To Interfere With The Payment Of No-Fault Benefits**

127.  Upon information and belief, The GEICO Crew, by and through its agents, has demanded an Examination Under Oath (EUO) of over 1000 medical providers cloaked under the guise of verifying the eligibility and entitlement of the provider to collect No-Fault benefits.

128.  Upon information and belief, The GEICO Crew, by and through its agents, developed a practice and protocol for conducting EUOs of medical providers ("the EUO Protocol").

129.  The EUO Protocol starts innocuously but, as it proceeds, it becomes so invasive it is only comparable to an investigation performed by a law enforcement agency pursuant to valid warrant(s) based on probable cause.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 25 of 46 PageID #: 32

130.   The EUO Protocol is designed to be so intrusive that the additional requests improperly constrain the provider to release sensitive personal or proprietary information that the provider would not otherwise disclose.

131.   The EUO Protocol is designed to destroy the provider's agency in making decisions concerning disclosure of sensitive personal or proprietary information.

132.   The EUO Protocol is designed to be so intrusive that no medical provider can or will comply.

133.   On 06/14/24 The Practice appeared for an EUO.

134.   Prior to the EUO The Practice voluntarily produced documents seeking to expedite the EUO, and to aid the GEICO Crew in verifying its entitlement to receive No-Fault Benefits.

135.   Prior to the EUO The Practice confirmed that The GEICO Crew had received the documents.

136.   At the EUO Counsel for The Practice confirmed that GEICO had received The Practice's documentation.

137.   Despite The Practice's good-faith provision of documentation, and its appearance and cooperation at the EUO, GEICO was still not satisfied and requested even more information following the EUO.

138.   The GEICO Crew claimed, following the EUO that the information is necessary to complete the proof of claim for the claims identified on "Exhibit 1":

1. Sign-in sheets, calendars, schedules and materials reflecting the number of patients treated, with respect to the dates of service for the

L&B File No 2198-EUO-01

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 26 of 46 PageID #: 33

patients listed in the various batches identified within the EUO scheduling letters;

2. Treatment notes, evaluation and re-evaluation reports, and referrals from other healthcare providers for the patients listed in the various batches identified within the EUO scheduling letters;

3. A list of Dr. Ronald P. Mazza, D.C., P.C.'s, employees and documents identifying the relationship between each individual and Dr. Ronald P. Mazza, P.C., D.C., including but not limited to W-2s, 1099s, and/or K-1's and licensing and certification documentation, and if applicable, the medical services each employee rendered with regard to the patients listed in the various batches identified within the EUO scheduling letters;

4. Statements from Dr. Ronald P. Mazza, D.C., P.C., bank account(s), including documentation regarding account opening and opening balance, deposit and withdrawal logs from incorporation through the present and cancelled checks (front and back) that evince payments from this account and from Dr. Ronald P. Mazza, D.C., P.C., incorporation through the present;

5. Documents relating to the income and expenses of Dr. Ronald P. Mazza, D.C., P.C., including but not limited to payroll tax returns, corporate tax returns, financial statements and general ledgers;

6. Documents, contracts and agreements, including and proofs of payment thereunder

7. relating to the relationship between Dr. Ronald P. Mazza, D. C., P.C., and any entity or individual that (i) leases space to Dr. Ronald P. Mazza, D.C., P.C., or (ii) provides management, marketing, consulting, administrative, mailing, billing, staffing, transportation, or collection services to Dr. Ronald P. Mazza, D.C., P. C. (to the extent not previously provided);

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 27 of 46 PageID #: 34

8. Information about any equipment and devices used by Dr. Ronald P. Mazza, D. C., P.C., to administer healthcare services, including but not limited to: (i) make, model and other identifying information, (ii) photos; (iii) printed manuals brochures, and documentation; and (iv) agreements, contracts, invoices relating to Dr. Ronald P.Mazza, D.C., P.C.'s purchase or lease use, purchase lease or rental of any equipment and devices used to administer healthcare services.

9. Copy of W-2s or proof of payment for any and all chiropractors rendering chiropractic services under Dr. Ronald P. Mazza, D.C., P.C., including but not limited to:

   a. Dr. Victoria Franco

10. Last six (6) months proof of payment for rent at the 1570 Old Country Road, Westbury, New York location and the 27-51 27th Street, Astoria, New York location (front and back of cashed checks or proof of electronic payment);

11. Copy of the written agreement between Dr. Ronald P. Mazza, D.C., P.C., and the advertising company, "Comprehensive Business Development" along with proof of payment for said services paid within the last forty five days (at a minimum, one months proof of same).

12. Office sign in sheets for the following dates and office locations:

    a. April 3, 2024- Astoria Location

    b. April 17, 2024- Westbury Location

    c. April 18, 2024- Westbury Location

    d. April 10, 2024- Farmingdale Location

    e. April 12, 2024- Farmingdale Location

    f. April 15, 2024- Farmingdale Location

    g. April 16, 2024- Farmingdale Location

    h. April 17, 2024- Farmingdale Location

    i. April 19, 2024- Farmingdale Location

    j. May 6, 2024- Farmingdale Location

**L&B File No 2198-EUO-01**

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 28 of 46 PageID #: 35

k. May 8, 2024- Farmingdale Location

13. Copy of the fully executed sublease between NFWC Rental Group and Neurodiagnostic Medical P.C. Please note the copy previously provided is not an executed copy of same.

14. Copy of the fully executed sublease between NFWC Rental Group and NY Spine Specialist. Please note the copy previously provided is not an executed copy of same.

15. Copy of the fully executed referral agreement as referred to within Dr. Mazza's EUO testimony between Dr. Ronald P. Mazza, D.C., P.C., and Orthopro Services.

16. Copy of the fully executed lease and/or sublease agreement between NFWC Rental Group, GM Partners, LLC, and/or Dr. Ronald P. Mazza, D.C., P.C., and any MRI facility or persons rendering radiological services in the Westbury, Farmingdale and/or Astoria locations, to the extent that one exists. If no such agreement exists, please indicate same.

17. Complete list of any and all medical providers and/or professional corporations and/or persons rendering medical services who have lease and/or sublease agreements with Dr. Ronald P. Mazza, D.C., P.C., NFWC Rental Group, GM Partners, LLC and/or any entity of which Dr. Mazza holds a financial interest in the Westbury, Farmingdale and/or Astoria locations.

18. Last six (6) months of rent checks from any and all providers who sublease office space from Dr. Ronald P. Mazza, P.C., D.C., NFWC Rental Group and/or GM Partners, LLC.,in the following locations:

a. 1570 Old Country Road, Westbury, New York

b. 56A Motor Avenue, Farmingdale, New York

c. 27-51 27th Street, Astoria, New York

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 29 of 46 PageID #: 36

139.    The GEICO Crew is abusing both the right to verification and the right to an EUO as an attempt to delay and ultimately deny payment.

140.    Since on or about 03/01//2024, The GEICO Crew has paid $0 on ANY claim submitted by The Practice.

141.    Plaintiff now requests a declaration of the rights and other legal relations of the respective parties in accordance with the applicable laws relating to declaratory judgment.

142.    Plaintiff has no other adequate remedy at law as these improper requests by The GEICO Crew render the claims not ripe for litigation.

# As and for a First Cause of Action – Declaratory Judgment Pursuant to CPLR 3001

143.    Plaintiff repeats and re-alleges paragraphs 1-141 as if fully set forth herein.

144.    The Practice is eligible to receive No-Fault benefits and no proper verification requests remain outstanding.

145.    The verification requests made by The GEICO Crew are an abuse of the claim verification system.

146.    The GEICO Crew refuses to pay or deny the pending claims as it leaves Plaintiff's claims in limbo, frustrating the purpose of the New York State No Fault Regulations.

147.     Accordingly, there exists a justiciable controversy between The Practice and The GEICO Crew and The Practice asks for a declaration of their rights as outlined below.

## As and for a Second Cause of Action - Common-Law Fraud

148.     Plaintiff repeats and re-alleges paragraphs 1-148 as if fully set forth herein.

149.     The GEICO Crew represented to The Practice that it would pay No-Fault benefits to The Practice if The Practice verified the eligibility and entitlement of Levron, Inc., to collect No-Fault benefits under the No-Fault regulations.

150.     The GEICO Crew's representation was false because The GEICO Crew knew or should have known that the information it was going to demand The Practice provide to verify the claims was improper and solely requested to delay payment.

151.     The GEICO Crew's representation was false because The GEICO Crew knew or should have known that, upon information and belief, no provider has fully complied with the EUO Protocol's document request.

152.     The GEICO Crew knew that the representation was false when The GEICO Crew made it, or that The GEICO Crew made the representation recklessly and with wanton disregard for its truth.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 31 of 46 PageID #: 38

153.     The GEICO Crew intended that The Practice rely on the representation that No-Fault benefits would be paid if The Practice provided the information The GEICO Crew demanded.

154.     The Practice reasonably relied on The GEICO Crew's representation.

155.     The Practice suffered damages in the form of providing medical services and equipment in the amount of $63,974.04 as set forth on "Exhibit 1," plus the continuing claims The GEICO Crew continues to delay upon receipt, which is ever increasing to date.

156.     The Practice's reliance on The GEICO Crew's representation was a substantial factor in causing The Practice's damages.

## As and for a Third Cause of Action - breach of the implied covenant of good faith and fair dealing

157.     Plaintiff repeats and re-alleges paragraphs 1-140 as if fully set forth herein.

158.     The Practice and The GEICO Crew entered into an agreement via an assignment of benefits whereby The GEICO Crew agreed to reimburse The Practice at a rate equal the Workers' Compensation Fee Schedule for verified claims seeking No-Fault benefits for medically necessary treatments and services.

159.     The Practice did nothing to interfere with The GEICO Crew receiving the fruit of this contract, i.e., GEICO had the opportunity to fulfill its contractual obligation to reimburse medical treatment arising from a motor vehicle accident to the GEICO insureds identified on Exhibit 1.

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 32 of 46 PageID #: 39

160.    The Practice did all, or substantially all, the significant things that the contract required them to do.

161.    All conditions required for The GEICO Crew's performance have occurred.

162.    The EUO Protocol intentionally interfered with The Practice's ability to receive the fruit of the contract with GEICO, i.e., reimbursement for medical services provided to GEICO's insured identified in Exhibit 1.

163.    The GEICO Crew's delay and non-payment is in bad faith and it has unfairly interfered with The Practice's right to receive the benefits of the contract.

164.    The GEICO Crew's conduct caused The Practice to suffer consequential damages caused by GEICO's implementation of the EUO Protocol including lost revenue and lost opportunity costs caused by the GEICO Crew's bad faith and fair dealing.

## As and for a Fourth Cause of Action - Intentional Interference with Contractual Relations

165.    Plaintiff repeats and re-alleges paragraphs 1-164 as if fully set forth herein.

166.    There were agreements between The Practice and the patients identified on "Exhibit 1".

167.    The GEICO Crew knew or should have known of those agreements.

168.    The GEICO Crew's conduct prevented performance or made performance more expensive or difficult for The Practice.

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 33 of 46 PageID #: 40

169.     The GEICO Crew intended to disrupt the performance of this contract.

170.     The Practice was damaged by The GEICO Crew's conduct.

171.     The GEICO Crew's conduct was a substantial factor in causing The

Practice's direct and consequential damages.

## **As and for a Fifth Cause of Action**

172.     Plaintiff repeats and re-alleges paragraphs 1-171 as if fully set forth

herein.

173.     Plaintiff retained attorneys, Lewin & Baglio, LLP, to prosecute these

claims arising under the No-Fault laws, Plaintiff is therefore entitled to recover

attorney's fees, PLUS interest thereon from the date of entry of any decision.

## **As and for a Sixth Cause of Action**

174.     Plaintiff repeats and re-alleges paragraphs 1-173 as if fully set forth

herein.

175.     The claims identified on "Exhibit 1", and all claims The Practice has

submitted to The GEICO Crew from 01/01/2024 through the present, are

reimbursable and covered under New York State Insurance Laws.

176.     The GEICO Crew has paid $0.00 toward said claims and that is the

reason for this lawsuit.

177.     DR. MAZZAis entitled to payment of the delayed claims, totaling

$63,974.04 and continuing PLUS simple interest at the rate of TWO PERCENT

(2%) monthly computed from THIRTY (30) days after the date the claim was

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 34 of 46 PageID #: 41

submitted to the defendant until the amount due is paid in full, pursuant to 11

N.Y.C.R.R. § 65-3.9.

# <u>Wherefore</u>

The plaintiff respectfully requests this court declare the following with

regard to all causes of action:

We ask the Court to declare The Practice meets all applicable New York

State and/or local licensing requirements necessary to render chiropractic

treatment and services;

We ask the Court to declare that the information sought by The GEICO

Crew is not necessary to verify whether The Practice meets all applicable New York

State and/or local licensing requirements necessary to render chiropractic

treatment and services;

We ask the Court to declare that the "EUO PROTOCOL", which results in

an unreasonable amount of No-Fault claims being rendered premature for a want of

information, is an abuse of the claim verification process;

We ask the Court to declare that The GEICO Crew's verification requests,

which are improper and/or unnecessary to verify the relevant claim, will not toll the

30-day statutory time limit to pay or deny said claims and, thus, render those

claims ripe for litigation; and

FILED: NASSAU COUNTY CLERK 08/05/2024 05:34 PM
NYSCEF DOC. NO. 1

For such other and further relief as to the Court may seem just and

proper.



By: Michael Baglio, Esq.
LEWIN & BAGLIO, LLP
Attorneys for the Plaintiff
1100 Shames Drive
Suite 100
Westbury, NY 11590
(516) 307-1777 (Office)
(516) 307-1770 (Fax)
L&B File No.: 2198-EUO-01

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

RONALD P. MAZZA, D.C., P.C.

Plaintiff,

**Index No.**

-Against-

**VERIFICATION**

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO CASUALTY COMPANY,
GEICO CHOICE INSURANCE COMPANY,
GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO SECURE INSURANCE COMPANY

Defendant.

I, RONALD P. MAZZA, D.C hereby say:

I am the owner and/or officer of RONALD P. MAZZA, D.C., P.C. in the
above-entitled action. I have read foregoing Complaint against GOVERNMENT
EMPLOYEES INSURANCE COMPANY, GEICO CAUSUALTY COMPANY,
GEICO CHOICE INSURANCE COMPANY, GEICO GENERAL INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO SECURE INSURANCE
COMPANY and know the contents thereof, the same are true to my knowledge
except as to matters therein stated to be alleged upon information and/or belief
and, as to those matters, I believe them to be true. This verification is made
pursuant to CPLR § 3020(d)(3).

I affirm this ___5th___ day of ___August___, 2024 under the penalties of
perjury under the laws of the statue of New York, which may include a fine or
imprisonment, that the foregoing is true and I understand that this document may
be filed in an action or proceeding in a court of law.

_____
DR. RONALD MAZZA

LGB File No.: 2198-EUO-01

Case 2:24-cv-06984-JMW Document 1-2 Filed 10/02/24 Page 37 of 46 PageID #: 44

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NASSAU

RONALD P. MAZZA, D.C., P.C.,,

Plaintiff,

**Index No.**

-Against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO CASUALTY COMPANY,
GEICO CHOICE INSURANCE COMPANY
GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO SECURE INSURANCE COMPANY .

Defendants.

Pursuant to Section 130-1 of the rules of the chief administrator (22 N.Y.C.R.R.) I certify that to the best of my knowledge, information and belief, Formed after an inquiry reasonable under the circumstances, the within Summons and Verified Complaint are not frivolous

_____
By: Michael Baglio, Esq

Notice Pursuant to CPLR 2103(5) declining service by electronic transmittal

## SUMMONS AND COMPLAINT

# **LEWIN& BAGLIO, LLP**

1100 Shames Dr.,
Suite 100
Westbury, NY 11590
Tel: (516) 307-1777
Fax: (516) 307-1770
178.    L&B File No. 2198-EUO-01

To:
Attorney for defendant
Service of a copy of the within SUMMONS AND COMPLAINT is hereby admitted.
Dated:

_____
Attorney for Defendant

**L&B File No 2198-EUO-01**

| Assignor's Name | Date of Service | Amount Billed |
|---|---|---|
| ALBA MORALES | 4/12/2024 | $108.14 |
| ALBA MORALES | 4/22/2024 | $108.14 |
| ALBA MORALES | 4/29/2024 | $108.14 |
| ALBA MORALES | 5/15/2024 | $108.14 |
| ALBA MORALES | 5/28/2024 | $144.33 |
| ALBA MORALES | 5/31/2024 | $108.14 |
| ALBA MORALES | 4/11/24-4/12/24 | $216.28 |
| ALBA MORALES | 4/15/24-4/16/24 | $252.47 |
| ALBA MORALES | 4/17/24-4/18/24 | $216.28 |
| ALBA MORALES | 4/23/24-4/24/24 | $216.28 |
| ALBA MORALES | 4/9/24-4/10/24 | $216.28 |
| ALBA MORALES | 5/1/24-5/2/24 | $216.28 |
| ALBA MORALES | 5/13/24-5/14/24 | $216.28 |
| ALBA MORALES | 5/9/24-5/10/24 | $216.28 |
| ALEXANDER E QUEVEDO | 3/22/2024 | $108.14 |
| ALEXANDER E QUEVEDO | 4/1/2024 | $108.14 |
| ALEXANDER E QUEVEDO | 4/3/2024 | $108.14 |
| ALEXANDER E QUEVEDO | 4/17/2024 | $108.14 |
| ALEXANDER E QUEVEDO | 3/26/24-3/27/24 | $216.28 |
| ALEXANDER E QUEVEDO | 4/15/24-4/16/24 | $216.28 |
| ALEXANDER E QUEVEDO | 4/5/24-4/8/24 | $216.28 |
| ALEXANDER E QUEVEDO | 4/9/24-4/10/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 4/17/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 4/22/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 4/26/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 5/1/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 5/10/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 5/15/2024 | $108.14 |
| ANDRES GONZALEZ-FERNANDEZ | 3/27/24-4/3/24 | $323.44 |
| ANDRES GONZALEZ-FERNANDEZ | 4/15/24-4/16/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 4/23/24-4/24/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 4/29/24-4/30/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 4/5/24-4/8/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 4/9/24-4/10/24 | $216.28 |
| ANDRES GONZALEZ-FERNANDEZ | 5/13/24-5/14/24 | $252.47 |
| ANDRES GONZALEZ-FERNANDEZ | 5/31/24-6/3/24 | $216.28 |
| ANDRES HENAO | 4/23/2024 | $108.14 |
| ANDRES HENAO | 4/26/2024 | $108.14 |
| ANDRES HENAO | 4/29/2024 | $108.14 |
| ANDRES HENAO | 5/10/2024 | $108.14 |
| ANDRES HENAO | 4/8/24-4/19/24 | $539.72 |
| ANTHONY BEALE | 4/22/2024 | $108.14 |
| ANTHONY BEALE | 5/31/2024 | $144.33 |

| | | |
|---|---|---|
| ANTHONY BEALE | 6/4/2024 | $108.14 |
| ANTHONY BEALE | 4/2/24-4/3/24 | $215.30 |
| ANTHONY BEALE | 5/13/24-5/14/24 | $216.28 |
| ANTHONY EUGENIO | 3/25/2024 | $108.14 |
| ANTHONY EUGENIO | 4/3/2024 | $108.14 |
| ANTHONY EUGENIO | 4/16/2024 | $108.14 |
| ANTHONY EUGENIO | 4/1/24-4/2/24 | $216.28 |
| ANTHONY EUGENIO | 4/9/24-4/10/24 | $216.28 |
| ARBEY HINCAPIEPARADA | 3/20/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 3/26/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 4/2/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 4/23/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 4/26/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 4/30/2024 | $108.14 |
| ARBEY HINCAPIEPARADA | 3/28/24-3/29/24 | $216.28 |
| ARBEY HINCAPIEPARADA | 4/11/24-4/12/24 | $252.47 |
| ARBEY HINCAPIEPARADA | 4/17/24-4/18/24 | $216.28 |
| ARBEY HINCAPIEPARADA | 4/3/24-4/4/24 | $216.28 |
| ARTHUR VINCENT KEN SERALINE | 5/15/2024 | $108.14 |
| ARTHUR VINCENT KEN SERALINE | 4/10/24-4/15/24 | $323.44 |
| ARTHUR VINCENT KEN SERALINE | 4/10/24-5/8/24 | $864.14 |
| BENDJY DABEL | 3/29/2024 | $108.14 |
| BENDJY DABEL | 4/2/2024 | $108.14 |
| BENDJY DABEL | 4/3/2024 | $108.14 |
| BENDJY DABEL | 4/8/2024 | $108.14 |
| BENDJY DABEL | 4/10/2024 | $108.14 |
| BENDJY DABEL | 4/12/2024 | $108.14 |
| BENDJY DABEL | 4/17/2024 | $108.14 |
| BENDJY DABEL | 4/23/2024 | $108.14 |
| BENDJY DABEL | 4/26/2024 | $108.14 |
| BENDJY DABEL | 4/29/2024 | $144.33 |
| BENDJY DABEL | 5/15/2024 | $108.14 |
| BENDJY DABEL | 4/19/24-4/22/24 | $216.28 |
| BENDJY DABEL | 5/13/24-5/14/24 | $216.28 |
| BENDJY DABEL | 5/31/24-6/3/24 | $216.28 |
| BENGI A DELVA | 3/20/2024 | $108.14 |
| BENGI A DELVA | 3/26/2024 | $108.14 |
| BENGI DELVA | 3/22/2024 | $108.14 |
| BRIGITTE THOMPSON | 6/5/2024 | $108.14 |
| BRIGITTE THOMPSON | 5/22/24-6/3/24 | $647.86 |
| CAROLE ALEXANDRE | 3/25/2024 | $108.14 |
| CAROLE ALEXANDRE | 3/27/2024 | $108.14 |
| CELY DECOLONGON | 3/25/2024 | $108.14 |
| CELY DECOLONGON | 4/8/2024 | $108.14 |

| | | |
|---|---|---|
| CELY DECOLONGON | 4/11/2024 | $108.14 |
| CELY DECOLONGON | 4/18/2024 | $108.14 |
| CELY DECOLONGON | 4/23/2024 | $108.14 |
| CELY DECOLONGON | 4/25/2024 | $144.33 |
| CELY DECOLONGON | 5/14/2024 | $108.14 |
| CELY DECOLONGON | 5/16/2024 | $108.14 |
| CELY DECOLONGON | 6/3/2024 | $108.14 |
| CELY DECOLONGON | 6/5/2024 | $108.14 |
| CELY DECOLONGON | 3/28/24-3/29/24 | $216.28 |
| CELY DECOLONGON | 4/15/24-4/16/24 | $216.28 |
| CELY DECOLONGON | 5/1/24-5/2/24 | $216.28 |
| EDUARDO PERALTA | 3/22/24-3/25/24 | $252.47 |
| EDUARDO S PERALTA | 3/20/2024 | $108.14 |
| EDUARDO S PERALTA | 3/26/2024 | $108.14 |
| EDUARDO S PERALTA | 3/29/2024 | $108.14 |
| EDUARDO S PERALTA | 4/3/2024 | $108.14 |
| EDUARDO S PERALTA | 4/9/2024 | $108.14 |
| EDUARDO S PERALTA | 4/12/2024 | $108.14 |
| EDUARDO S PERALTA | 4/15/2024 | $108.14 |
| EDUARDO S PERALTA | 4/26/2024 | $108.14 |
| EDUARDO S PERALTA | 5/10/2024 | $108.14 |
| EDUARDO S PERALTA | 6/5/2024 | $108.14 |
| EDUARDO S PERALTA | 4/1/24-4/2/24 | $216.28 |
| EDUARDO S PERALTA | 4/19/24-4/22/24 | $216.28 |
| EDUARDO S PERALTA | 4/23/24-4/24/24 | $216.28 |
| EDUARDO S PERALTA | 4/29/24-4/30/24 | $216.28 |
| EDUARDO S PERALTA | 4/5/24-4/8/24 | $216.28 |
| EDUARDO S PERALTA | 5/31/24-6/3/24 | $216.28 |
| ELVIS K RUIZ FLORES | 3/22/2024 | $108.14 |
| EMILIO GARCIA | 3/29/2024 | $107.16 |
| EMILIO GARCIA | 4/8/2024 | $108.14 |
| EMILIO GARCIA | 4/14/2024 | $108.14 |
| EMILIO GARCIA | 4/16/2024 | $108.14 |
| EMILIO GARCIA | 4/24/2024 | $108.14 |
| EMILIO GARCIA | 4/29/2024 | $108.14 |
| EMILIO GARCIA | 5/10/2024 | $108.14 |
| EMILIO GARCIA | 5/14/2024 | $108.14 |
| EMILIO GARCIA | 5/31/2024 | $108.14 |
| EXANTUS MICHEL | 3/26/24-3/27/24 | $216.28 |
| JAIME PEREZ | 3/22/24-3/25/24 | $216.28 |
| JAIME PEREZ | 3/26/24-3/27/24 | $216.28 |
| JAZMYN LTANYA SMITH | 3/20/2024 | $108.14 |
| JAZMYN LTANYA SMITH | 3/22/2024 | $108.14 |
| JAZMYN LTANYA SMITH | 3/29/2024 | $108.14 |

| | | |
|---|---|---|
| JAZMYN LTANYA SMITH | 4/1/2024 | $108.14 |
| JENNIFER L PASINKOFF | 4/2/2024 | $108.14 |
| JENNIFER L PASINKOFF | 4/9/2024 | $108.14 |
| JENNIFER L PASINKOFF | 4/16/2024 | $108.14 |
| JENNIFER L PASINKOFF | 5/9/2024 | $108.14 |
| JENNIFER L PASINKOFF | 3/26/24-3/27/24 | $252.47 |
| JOANA LOPEZ | 3/22/2024 | $108.14 |
| JOANA LOPEZ | 3/29/2024 | $108.14 |
| JOANA LOPEZ | 4/16/2024 | $108.14 |
| JOANA LOPEZ | 4/17/2024 | $108.14 |
| JOANA LOPEZ | 4/29/2024 | $144.33 |
| JOANA LOPEZ | 5/1/2024 | $108.14 |
| JOANA LOPEZ | 5/10/2024 | $108.14 |
| JOANA LOPEZ | 5/14/2024 | $108.14 |
| JOANA LOPEZ | 5/15/2024 | $108.14 |
| JOANA LOPEZ | 3/26/24-3/27/24 | $216.28 |
| JOANA LOPEZ | 4/9/24-4/10/24 | $216.28 |
| JOHN D JANOUTUS | 3/22/2024 | $108.14 |
| JOHN D JANOUTUS | 3/26/2024 | $108.14 |
| JOHN D JANOUTUS | 3/29/2024 | $108.14 |
| JOHN D JANOUTUS | 4/2/2024 | $108.14 |
| JOHN D JANOUTUS | 4/3/2024 | $108.14 |
| JOHN D JANOUTUS | 4/5/2024 | $108.14 |
| JOHN D JANOUTUS | 4/10/2024 | $108.14 |
| JOHN D JANOUTUS | 4/12/2024 | $108.14 |
| JOHN D JANOUTUS | 4/17/2024 | $108.14 |
| JOHN D JANOUTUS | 4/19/2024 | $108.14 |
| JOHN D JANOUTUS | 4/23/2024 | $108.14 |
| JOHN D JANOUTUS | 5/14/2024 | $108.14 |
| JOHN D JANOUTUS | 4/15/24-4/16/24 | $216.28 |
| JUAN PONCE CHACON | 3/22/2024 | $108.14 |
| JUAN PONCE CHACON | 3/26/2024 | $108.14 |
| JUAN PONCE CHACON | 3/29/2024 | $108.14 |
| JUAN PONCE CHACON | 4/1/2024 | $108.14 |
| JUAN PONCE CHACON | 4/3/2024 | $450.00 |
| JUAN PONCE CHACON | 4/5/2024 | $108.14 |
| JULIE KANGHONG | 4/12/2024 | $108.14 |
| JULIE KANGHONG | 4/17/2024 | $108.14 |
| JULIE KANGHONG | 4/24/2024 | $144.33 |
| JULIE KANGHONG | 3/20/24-3/21/24 | $216.28 |
| JULIE KANGHONG | 3/22/24-3/25/24 | $216.28 |
| JULIE KANGHONG | 3/26/24-3/27/24 | $216.28 |
| JULIE KANGHONG | 3/28/24-3/29/24 | $216.28 |
| JULIE KANGHONG | 4/1/24-4/2/24 | $216.28 |

| | | |
|---|---|---|
| JULIE KANGHONG | 4/15/24-4/16/24 | $216.28 |
| JULIE KANGHONG | 4/3/24-4/4/24 | $216.28 |
| JULIE KANGHONG | 4/5/24-4/8/24 | $216.28 |
| JULIE KANGHONG | 4/9/24-4/10/24 | $216.28 |
| KARI K PARKER | 3/22/2024 | $108.14 |
| KARI K PARKER | 3/29/2024 | $108.14 |
| KARI K PARKER | 4/5/2024 | $108.14 |
| KARI K PARKER | 4/9/2024 | $108.14 |
| KARI K PARKER | 4/12/2024 | $108.14 |
| KARI K PARKER | 5/14/2024 | $108.14 |
| KARI K PARKER | 6/5/2024 | $108.14 |
| KARI K PARKER | 3/26/24-3/27/24 | $216.28 |
| KARI K PARKER | 4/1/24-4/2/24 | $216.28 |
| KARI K PARKER | 4/15/24-4/16/24 | $252.47 |
| KARI K PARKER | 5/31/24-6/3/24 | $216.28 |
| KENNETH K HONG | 3/20/2024 | $216.28 |
| KENNETH K HONG | 4/25/2024 | $108.14 |
| KENNETH K HONG | 3/22/24-3/25/24 | $216.28 |
| KENNETH K HONG | 3/26/24-3/27/24 | $216.28 |
| KENNETH K HONG | 3/28/24-3/29/24 | $216.28 |
| KENNETH K HONG | 4/1/24-4/2/24 | $216.28 |
| KENNETH K HONG | 4/11/24-4/12/24 | $216.28 |
| KENNETH K HONG | 4/15/24-4/16/24 | $216.28 |
| KENNETH K HONG | 4/17/24-4/18/24 | $216.28 |
| KENNETH K HONG | 4/23/24-4/24/24 | $252.47 |
| KENNETH K HONG | 4/3/24-4/4/24 | $216.28 |
| KENNETH K HONG | 4/5/24-4/8/24 | $216.28 |
| KENNETH K HONG | 4/9/24-4/10/24 | $216.28 |
| KLETON PIERRE | 4/2/2024 | $108.14 |
| KLETON PIERRE | 4/3/2024 | $108.14 |
| KLETON PIERRE | 4/5/2024 | $108.14 |
| KLETON PIERRE | 4/16/2024 | $108.14 |
| KLETON PIERRE | 4/30/2024 | $108.14 |
| KLETON PIERRE | 5/10/2024 | $108.14 |
| KLETON PIERRE | 5/14/2024 | $108.14 |
| KLETON PIERRE | 3/26/24-3/27/24 | $216.28 |
| KLETON PIERRE | 4/11/24-4/12/24 | $216.28 |
| KLETON PIERRE | 4/17/24-4/18/24 | $252.47 |
| KLETON PIERRE | 4/23/24-4/24/24 | $216.28 |
| KLETON PIERRE | 5/1/24-5/2/24 | $216.28 |
| KLETON PIERRE | 5/15/24-5/16/24 | $216.28 |
| MAJID A CHIBANE | 3/27/2024 | $108.14 |
| MAJID A CHIBANE | 4/3/2024 | $108.14 |
| MAJID A CHIBANE | 4/12/2024 | $108.14 |

Case 2:24-cv-06984-JMW   Document 1-2   Filed 10/02/24   Page 43 of 46 PageID #: 50

| | | |
|---|---|---|
| MAJID A CHIBANE | 4/30/2024 | $108.14 |
| MAJID A CHIBANE | 5/10/2024 | $108.14 |
| MAJID A CHIBANE | 5/15/2024 | $108.14 |
| MAJID A CHIBANE | 3/22/24-3/25/24 | $216.28 |
| MAJID A CHIBANE | 4/1/24-4/2/24 | $216.28 |
| MAJID A CHIBANE | 4/15/24-4/16/24 | $216.28 |
| MAJID A CHIBANE | 4/5/24-4/8/24 | $216.28 |
| MAJID A CHIBANE | 4/9/24-4/10/24 | $216.28 |
| MAJID A CHIBANE | 5/13/24-5/14/24 | $216.28 |
| MAJID A CHIBANE | 5/31/24-6/3/24 | $252.47 |
| MAJID A CHIBANE | 6/4/24-6/5/24 | $216.28 |
| MICHELLE GAYLE COTILLO | 3/20/2024 | $108.14 |
| MICHELLE GAYLE COTILLO | 3/22/2024 | $108.14 |
| MIGUEL ORTIZ | 4/22/2024 | $107.16 |
| MIRIAM ROSADO | 3/20/2024 | $108.14 |
| MIRIAM ROSADO | 3/25/2024 | $108.14 |
| MIRIAM ROSADO | 3/29/2024 | $108.14 |
| MIRIAM ROSADO | 4/1/2024 | $108.14 |
| MIRIAM ROSADO | 4/3/2024 | $108.14 |
| MIRIAM ROSADO | 4/12/2024 | $108.14 |
| MIRIAM ROSADO | 4/17/2024 | $108.14 |
| MIRIAM ROSADO | 4/26/2024 | $108.14 |
| MIRIAM ROSADO | 5/1/2024 | $108.14 |
| MIRIAM ROSADO | 5/10/2024 | $108.14 |
| MIRIAM ROSADO | 5/15/2024 | $108.14 |
| MIRIAM ROSADO | 3/26/24-3/27/24 | $216.28 |
| MIRIAM ROSADO | 4/15/24-4/16/24 | $216.28 |
| MIRIAM ROSADO | 4/29/24-4/30/24 | $216.28 |
| MIRIAM ROSADO | 4/5/24-4/8/24 | $216.28 |
| MIRIAM ROSADO | 4/9/24-4/10/24 | $216.28 |
| MIRIAM ROSADO | 5/13/24-5/14/24 | $216.28 |
| MIRIAM ROSADO | 5/31/24-6/3/24 | $216.28 |
| MIRIAM ROSADO | 6/4/24-6/5/24 | $216.28 |
| MN COTILLO-GAYLE | 3/20/2024 | $108.14 |
| MN COTILLO-GAYLE | 3/22/2024 | $108.14 |
| MN COTILLO-GAYLE | 3/26/2024 | $108.14 |
| MN COTILLO-GAYLE | 3/29/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/1/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/3/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/8/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/9/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/12/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/16/2024 | $108.14 |
| MN COTILLO-GAYLE | 4/17/2024 | $108.14 |

| | | |
|---|---|---|
| NICOLE DHANIRAM | 3/29/2024 | $108.14 |
| NICOLE DHANIRAM | 4/1/2024 | $108.14 |
| NICOLE DHANIRAM | 4/3/2024 | $108.14 |
| NICOLE DHANIRAM | 4/5/2024 | $108.14 |
| NICOLE DHANIRAM | 4/10/2024 | $108.14 |
| NICOLE DHANIRAM | 4/12/2024 | $108.14 |
| NICOLE DHANIRAM | 4/29/2024 | $108.14 |
| NICOLE DHANIRAM | 5/1/2024 | $108.14 |
| OLGA VIDES | 4/25/2024 | $108.14 |
| OSTEN LEBRUN | 3/22/24-3/25/24 | $216.28 |
| OSTENE LEBRUN | 4/2/2024 | $108.14 |
| OSTENE LEBRUN | 4/24/2024 | $108.14 |
| OSTENE LEBRUN | 3/26/24-3/27/24 | $216.28 |
| OSTENE LEBRUN | 3/28/24-3/29/24 | $216.28 |
| OSTENE LEBRUN | 4/11/24-4/12/24 | $216.28 |
| OSTENE LEBRUN | 4/15/24-4/16/24 | $216.28 |
| OSTENE LEBRUN | 4/25/24-4/26/24 | $252.47 |
| OSTENE LEBRUN | 4/29/24-4/30/24 | $216.28 |
| OSTENE LEBRUN | 4/3/24-4/4/24 | $216.28 |
| OSTENE LEBRUN | 4/5/24-4/8/24 | $216.28 |
| OSTENE LEBRUN | 4/6/24/4/10/24 | $216.28 |
| OSTENE LEBRUN | 5/1/24-5/2/24 | $216.28 |
| PAOLA A BALSEROSANCHEZ | 4/2/2024 | $108.14 |
| PAOLA A BALSEROSANCHEZ | 4/11/2024 | $108.14 |
| PAOLA A BALSEROSANCHEZ | 4/16/2024 | $144.33 |
| PAOLA A BALSEROSANCHEZ | 4/30/2024 | $108.14 |
| PAOLA A BALSEROSANCHEZ | 3/26/24-3/27/24 | $216.28 |
| PAOLA A BALSEROSANCHEZ | 4/17/24-4/18/24 | $216.28 |
| PAOLA A BALSEROSANCHEZ | 4/3/24-4/4/24 | $216.28 |
| PETER BALSAMO | 4/17/2024 | $108.14 |
| PETER BALSAMO | 4/26/2024 | $108.14 |
| PETER BALSAMO | 4/29/2024 | $216.28 |
| PETER BALSAMO | 5/1/2024 | $108.14 |
| PETER BALSAMO | 5/10/2024 | $108.14 |
| PETER BALSAMO | 5/13/2024 | $216.28 |
| PETER BALSAMO | 5/15/2024 | $108.14 |
| PETER BALSAMO | 6/3/2024 | $108.14 |
| PETER BALSAMO | 4/15/24-4/16/24 | $215.30 |
| PETER BALSAMO | 4/19/24-4/22/24 | $216.28 |
| PETER BALSAMO | 4/23/24-4/24/24 | $216.28 |
| PETER BALSAMO | 6/4/24-6/5/24 | $252.47 |
| PIERRE JOEL JUSTIN | 3/26/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 4/12/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 4/17/2024 | $108.14 |

| | | |
|---|---|---|
| PIERRE JOEL JUSTIN | 4/25/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 5/9/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 5/13/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 6/4/2024 | $108.14 |
| PIERRE JOEL JUSTIN | 3/1/24-3/5/24 | $323.44 |
| PIERRE JOEL JUSTIN | 3/11/24-3-25/24 | $973.26 |
| PIERRE JOEL JUSTIN | 3/28/24-3/29/24 | $216.28 |
| PIERRE JOEL JUSTIN | 4/1/24-4/2/24 | $216.28 |
| PIERRE JOEL JUSTIN | 4/12/24-4/15/24 | $252.47 |
| PIERRE JOEL JUSTIN | 4/19/24-4/22/24 | $216.28 |
| PIERRE JOEL JUSTIN | 4/29/24-4/30/24 | $216.28 |
| PIERRE JOEL JUSTIN | 4/5/24-4/8/24 | $216.28 |
| PIERRE JOEL JUSTIN | 4/9/24-4/10/24 | $216.28 |
| PIERRE JOEL JUSTIN | 5/1/24-5/2/24 | $216.28 |
| RENE GONZALEZ | 5/15/2024 | $108.14 |
| RENE GONZALEZ | 4/16/24-5/2/24 | $1,188.56 |
| RENE GONZALEZ | 5/7/24-5/10/24 | $324.42 |
| RENE GONZALEZ | 6/4/24-6/5/24 | $216.28 |
| REYNALDO RUBANG | 5/31/24-6/3/24 | $216.28 |
| REYNALDO RUBANG | 6/4/24-6/5/24 | $216.28 |
| ROXANNE A NEATH | 3/21/2024 | $558.14 |
| ROXANNE A NEATH | 3/26/24-3/27/24 | $216.28 |
| SATARA L GRIMES | 4/3/2024 | $108.14 |
| SATARA L GRIMES | 4/5/2024 | $108.14 |
| SATARA L GRIMES | 4/12/2024 | $108.14 |
| SATARA L GRIMES | 4/16/2024 | $108.14 |
| SATARA L GRIMES | 5/14/2024 | $108.14 |
| SATARA L GRIMES | 5/15/2024 | $108.14 |
| SATARA L GRIMES | 3/26/24-3/27/24 | $216.28 |
| SMINTHA SAINT HUBERT | 4/16/2024 | $108.14 |
| SMINTHA SAINT HUBERT | 3/26/24-3/27/24 | $216.28 |
| SMINTHA SAINT HUBERT | 4/5/24-4/8/24 | $216.28 |
| SOLVAY THERESA BOLANOS TAPIA | 3/20/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 3/25/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 4/3/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 4/15/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 4/17/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 4/24/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 5/1/2024 | $108.14 |
| SOLVAY THERESA BOLANOS TAPIA | 3/26/24-3/27/24 | $216.28 |
| SOLVAY THERESA BOLANOS TAPIA | 4/1/24-4/2/24 | $216.28 |
| SOLVAY THERESA BOLANOS TAPIA | 4/29/24-4/30/24 | $216.28 |
| SOLVAY THERESA BOLANOS TAPIA | 4/9/24-4/10/24 | $216.28 |
| VICTOR M LOPEZ | 3/26/2024 | $108.14 |

Case 2:24-cv-06984-JMW  Document 1-2  Filed 10/02/24  Page 46 of 46 PageID #: 53

| | | |
|---|---|---|
| VICTOR M LOPEZ | 3/29/2024 | $108.14 |
| VICTOR M LOPEZ | 4/1/2024 | $108.14 |
| VICTOR M LOPEZ | 4/3/2024 | $108.14 |
| VICTOR M LOPEZ | 4/5/2024 | $108.14 |
| VICTOR M LOPEZ | 4/12/2024 | $108.14 |
| VICTOR M LOPEZ | 4/17/2024 | $108.14 |
| VICTOR M LOPEZ | 4/26/2024 | $108.14 |
| VICTOR M LOPEZ | 5/1/2024 | $108.14 |
| VICTOR M LOPEZ | 5/10/2024 | $108.14 |
| VICTOR M LOPEZ | 5/15/2024 | $108.14 |
| VICTOR M LOPEZ | 6/4/2024 | $108.14 |
| VICTOR M LOPEZ | 3/22/24-3/25/24 | $216.28 |
| VICTOR M LOPEZ | 4/15/24-4/16/24 | $216.28 |
| VICTOR M LOPEZ | 4/29/24-4/30/24 | $216.28 |
| VICTOR M LOPEZ | 4/6/24-4/10/24 | $216.28 |
| VICTOR M LOPEZ | 5/13/24-5/14/24 | $252.47 |
| YC RODRIGUEZ VASQUEZ | 3/22/2024 | $36.19 |
| YC RODRIGUEZ VASQUEZ | 3/29/2024 | $108.14 |
| YC RODRIGUEZ VASQUEZ | 4/2/2024 | $108.14 |
| YC RODRIGUEZ VASQUEZ | 4/3/2024 | $108.14 |
| YC RODRIGUEZ VASQUEZ | 4/5/2024 | $108.14 |
| YC RODRIGUEZ VASQUEZ | 3/26/24-3/27/24 | $216.28 |
| YEFFRY M SANCHEZ | 3/22/2024 | $108.14 |
| YEFFRY SANCHEZ | 3/20/2024 | $108.14 |
| YEFFRY SANCHEZ | 3/29/2024 | $108.14 |
| YVONNE DORSEY | 3/29/2024 | $108.14 |
| YVONNE DORSEY | 4/1/2024 | $108.14 |
| YVONNE DORSEY | 4/5/2024 | $216.28 |
| YVONNE DORSEY | 4/12/2024 | $108.14 |
| YVONNE DORSEY | 4/23/2024 | $108.14 |
| YVONNE DORSEY | 4/29/2024 | $144.33 |
| YVONNE DORSEY | 5/1/2024 | $108.14 |
| YVONNE DORSEY | 5/10/2024 | $108.14 |
| YVONNE DORSEY | 5/14/2024 | $108.14 |
| YVONNE DORSEY | 5/15/2024 | $108.14 |
| YVONNE DORSEY | 3/22/24-3/25/24 | $216.28 |
| YVONNE DORSEY | 3/26/24-3/27/24 | $216.28 |
| YVONNE DORSEY | 4/15/24-4/16/24 | $216.28 |
| YVONNE DORSEY | 4/9/24-4/10/24 | $216.28 |
| YVONNE DORSEY | 6/4/24-6/5/24 | $216.28 |
| | | **$63,974.04** |